## Gilbert J. Vincent and others *v.* Jonathan Conklin.

The plaintiffs agreed to sell 103 barrels of rye to R., to be delivered by them to him in New York, and to be paid for by him in cash on delivery ; but by a change in this arrangement it was agreed that R. might have the rye converted into flour, to be returned to the plaintiffs at their landing at Poughkeepsie, and then to be by the plaintiffs brought to New York and delivered to R., in performance of the original agreement of sale. Upon this second arrangement, R. agreed with the defendant to receive the rye from the plaintiffs, flour it, and return it to them. Afterwards, R., being unable to pay for the rye, gave up his contract, the plaintiffs to stand in his stead in relation to this rye, under the agreement with the defendant for the flouring. The defendant was notified of this change in relation to payment for flouring, and assented to it, and the plaintiffs assured him, that on his delivering

Vincent v. Conklin.

the flour at the plaintiffs' landing, they would pay him for flouring. Instead of so delivering it, the defendant shipped the flour to New York, where 14 barrels were sold. In an action of replevin by the plaintiffs, to recover the remaining 89 barrels, it was

*Held*, 1. That as something remained to be done by the plaintiffs, namely, bringing the flour to New York, before it would, pursuant to the agreement between R. and the plaintiffs, become the property of R., the title thereto continued in the plaintiffs. 2. That R. had the right to make the flour liable to the defendant's claim for milling, but that beyond that, he had no power either to pledge or sell it.

*Held*, also, that the defendant's contract being, not only to flour the grain, but to deliver it at the plaintiffs' landing, he was not entitled to payment until such delivery was made; and that it was at the place of delivery that he might insist upon payment, before actually parting with the possession.

A misuse of property pledged, or which is subject to a lien, by attempting to sell it and sending it to a market for that purpose, without notice to the owner, and without offering to deliver it or demanding payment of the lien, is in itself a conversion of the property, destroys the lien, and renders unnecessary a demand by the owner before commencing a suit to obtain the possession.

An amendment of the pleadings will not exclude, at the trial, a deposition previously taken in a cause, where the amendment simply changes the technical issue, without altering the true issue between the parties.

If, in consequence of the amendment, either party wishes a further examination of a witness named in the deposition, a motion should be made for a further commission; or if his testimony is inapplicable to the new issue, a motion to suppress the deposition would be proper.

General evidence of the indebtedness of a bailor to the bailee, not confined to the property upon which it is sought to prove the existence of a lien in favor of the bailee for his services, is not competent.

THE plaintiffs in this cause, being in the business of freighting and buying and selling grain at Poughkeepsie, and "in the usual business of a Hudson river landing," agreed to sell to one Roe 103 barrels of rye, to be delivered by them to him in New York, and to be paid for in cash on delivery at New York; but by a change in this arrangement, it was agreed that Roe might have the grain ground into flour at Poughkeepsie, to be returned to the plaintiffs at their landing, and then to be by the plaintiffs brought to New York and delivered to Roe, in performance of the original agreement of sale. Upon this second arrangement, Roe agreed with the defendant to receive the rye from the plaintiffs, flour it, and return it to them. Afterwards, Roe being unable to pay for the rye, gave up his

contract, the plaintiffs to stand in his stead in relation to this rye, under the agreement with the defendant for the flouring. The defendant was notified of this change in relation to the payment for the flouring, and assented to it, and the plaintiffs assured the defendant that on his delivering the flour at their landing, they would pay him for the flouring. The defendant, instead of delivering the flour at the plaintiffs' landing at Poughkeepsie, shipped it to New York for sale, to cover the indebtedness of Roe to them for flouring other grain.

Fourteen barrels of the flour were sold in New York, but the proceeds were paid to the plaintiffs before this case was tried. The remainder were replevied in this suit by the plaintiffs.

A witness for the defence testified that he presented a bill of the defendant to Roe, and requested payment. The bill was for flouring the grain in question, and other grain. That the defendant directed the witness to "sell the property and feed he has at Poughkeepsie and Newburgh, and pay himself." And that the witness delivered this message to Roe. The testimony of Roe was, that this direction related to certain bran and refuse which the defendant had in his flouring mill, and not to the flour, but that he afterwards learned that he had been misunderstood.

An exception was taken by the defendant to the exclusion of a question put by him to a witness, whether Roe was indebted during the season to the defendant for grinding grain. The question was objected to as not relating or restricted to the grain in question. The fact, however, of a general indebtedness, was afterwards shown by other witnesses. The plaintiffs' case rested principally upon the evidence of Roe, contained in a deposition taken under a commission issued to the state of Wisconsin. After the taking of the deposition, the declaration in the cause, which was drawn under the old system of pleading, was amended in form, but the issue between the parties was not in substance changed.

The trial was had before WOODRUFF, J., who charged, that if the jury found the facts as testified to by Roe, and as stated above, by the *first* arrangement no title vested in Roe till the

rye was delivered to him in New York. And by the change in the arrangement, the contract was modified so far, and so far only, as to allow the rye to go into the hands of the miller for a special purpose, (viz., to be milled,) but not so as to change the title. That if the flour was by the agreement with Roe, and also by the agreement with the defendant, to be returned to the plaintiffs, to be by them delivered to Roe in New York, according to the original contract to sell and deliver, it remained the plaintiffs' property, and they were entitled to the possession, so soon as the special purpose for which it was committed to the charge of the miller was accomplished.

The judge further charged:

2d. That upon the state of facts last stated, if the jury found them to be proved, the title to the flour remained in the plaintiffs. That something remained to be done before it would, by the terms of the agreement, become the property of Roe, and this was to be done by the plaintiffs, before they could demand payment for the rye, out of which it was manufactured, and Roe could neither sell nor pledge it without the plaintiffs' consent.

3d. That the defendant, upon this state of facts, acquired a lien upon the flour, to secure payment for milling. That by consenting that the rye should go into his hands to be milled at Poughkeepsie, before the plaintiffs brought it to New York for delivery to Roe, the plaintiffs subjected it to the operation of the rule of law which gives the miller, for his protection, a lien on the property upon which he has bestowed labor or expense in the process of milling. And that whether any thing was in fact due to defendant for milling the flour so received from the plaintiffs, the jury must find from the evidence.

4th. That it was the duty of the defendants (upon the state of facts before mentioned, if found by them) to deliver the flour at the plaintiffs' landing, at Poughkeepsie, and until he did so, he was not entitled to payment for milling.

5th. That if the contract with Roe by the plaintiffs was that the rye or the flour was to be delivered to him by the plaintiffs in New York, and paid for by him on delivery, and no delivery

Vincent v. Conklin.

was made by the plaintiffs, except to commit the rye to the defendant or his agent, for the special purpose of milling it and returning to them, then Roe had no right to sell it or authorize the defendant to sell it and account to him for it. He had no lawful control over it until it reached New York, except for the special purpose of milling it at Poughkeepsie, and returning it to the plaintiffs there. So that unless the plaintiffs assented to the authority alleged to have been given him by Roe, it gave the defendant no authority to sell the flour, so far as the plaintiffs are concerned, however it may have authorized him to sell flour, if any, which in fact belonged to Roe.

6th. That assuming that the defendant had a lien upon the flour, to which this suit relates, he was bound to observe good faith, and if the agreement was, as testified by Roe, that the flour should be returned to the plaintiffs at their landing, the defendant had no right, in virtue of his lien, to make any other disposition of it, by selling it or converting it to his own use, without notice to the owners, and without tendering or offering to deliver the flour, or demanding his pay for milling. He could not lawfully ship the property to New York, and sell it without notice to any party in interest, and the moment he did so, it was a misuse or misappropriation of the subject of the lien, which destroyed the lien.

The jury found a verdict in favor of the plaintiffs, assessing the value of the property at $306 50.

*N. Bowditch Blunt,* for the defendant.

FIRST. The deposition taken previously to the amendment of the proceedings, was inadmissible under the new issue. 1. The suit of plaintiff and defence of defendant was not the same after amendment, and the defendant should have had the liberty of further cross-examination of witness. 2. At least the plaintiff should have made special application out of court for leave to read his deposition under the new issue, where the defendant's objections might have been weighed.

SECOND. The inquiry as to the indebtedness of Roe to the

defendant, was clearly pertinent and proper, both to establish a general and particular lien on the flour in question.

THIRD. The motion for a nonsuit was improperly denied.

FOURTH. The charge of the judge was erroneous. I. The first exception is well taken. 1. The delivery of the rye to the defendant completed the sale, and put the property at the risk of Roe. 2. The plaintiffs were the mere bailees of Roe when the flour was re-delivered to them to be shipped to him at New York. II. The second exception is well taken. 1. There had been a partial delivery to Roe, and " what remained to be done" to the rye before the flour was delivered to Roe, did not render the sale incomplete, for in this respect both the plaintiffs and defendant were the agents of Roe. III. The third exception is well taken. 1. The plaintiffs had no right in any aspect of the case, to reduce the flour to possession without payment or tender of the amount of the plaintiffs' particular lien, if anything was due for flouring the rye. IV. The fourth exception is well taken. 1. The sale and delivery to Roe was complete, and the absolute title vested in him by the delivery to defendant—the arrangement as to flouring and delivery at New York, merely postponed the time of payment. V. The fifth exception is well taken. 1. The judge should have charged, instead of the matter objected to, that the control of the property was in Roe, unless they believed there was a re-sale by Roe to the plaintiffs before any lien was acquired by the defendant, or with his consent, and if so, and the jury believed the witness Armstrong, the defendant was authorized to sell the flour, and was entitled to a verdict.

FIFTH. The finding of the jury upon the points submitted to them, was against the weight of evidence.

*James T. Brady*, for the plaintiffs.

I. The proof established that Roe never acquired the title or right of possession of the flour in question, but both remained in the plaintiffs. Roe, therefore, could make no defence to this suit if he had attempted to convert the flour.

II. Conklin showed no better right to convert the flour than Roe had. Whether he had a lien or not, is in this case immaterial, because he sent the flour to New York, instead of Poughkeepsie, and directed it to be sold. This was a conversion for which he became at once liable. (1 Cow. Treatise, last Ed. 337.)

III. The consent of Roe to such conversion could not make it available, because he had no title to the property when the consent was given.

IV. The court correctly charged the jury in all respects, and the motion for nonsuit was properly denied.

By the Court. Ingraham, First J.—This action is for detaining flour which the defendant had ground out of rye for one Roe. The rye was the property of the plaintiffs, which they had agreed to sell to Roe, to be delivered in New York, and paid for on delivery. Afterwards it was agreed that the flour should be ground at Poughkeepsie, by the defendant. The plaintiffs still were to deliver the flour at New York, at an increased price.

Before this suit, Roe gave up his contract, and the plaintiffs agreed to take the flour made by the defendant on their own account, they to pay the same charges as Roe would be liable for, and this change was known to the defendant.

In July, 1847, the defendant sent 103 barrels to New York to be sold. This flour was replevied in this suit by the plaintiffs, except 14 barrels, which had been sold. Upon the trial of the cause a deposition of Roe was read in evidence and objected to by the defendant, upon the ground that the pleadings had been amended subsequently to the taking of the deposition—which objection was overruled, and we think properly—although the issue was technically altered, still the true issue between the parties remained the same, and this was known to the parties just as well before as after the amendment.

If either party wished further to examine the witness, a motion should have been made for a further commission, and if not, and the testimony was inapplicable to the new issue, a

motion to suppress the deposition would have been proper; but we are not prepared to hold that a mere technical amendment of proceedings renders void all previous depositions which may have been taken in a cause.

The objection taken to the inquiry in regard to Roe's indebtedness during the season to the defendant was well taken, and the question properly excluded, because it was not solely applicable to the property in controversy. It related to business which had been done both at Newburgh and Poughkeepsie, and the answer to it would not have given any information as to what claims the defendant had upon this rye.

Besides, this fact was afterwards proved by another witness, who testified to the amount of the bill as rendered by the defendant, and the defendant could have sustained no injury by the exclusion. On a case this would be immaterial. Still another witness also testified to the same effect.

The motion for a nonsuit was properly denied. The grounds of nonsuit are all included in the exceptions to the judge's charge, and are noticed in reference to those exceptions. The judge charged that if the flour was, by the agreement with Roe and the plaintiffs and with defendant, to be returned to the plaintiffs, to be delivered by them in New York, according to the original contract, it remained the plaintiffs' property, &c. There can be no doubt of the propriety of that charge, under the well known rule, that if any thing remains to be done to the goods before delivery, no title passes. Here the flour was to be carried, by the vendors, to New York, before delivery.

The second exception to the judge's charge involves the same points, with the additional remark made by the judge, that if so, Roe could neither sell nor pledge it without the plaintiffs' consent. He doubtless had the right to make it liable to the defendant's claim for grinding, because it was a part of the second agreement between plaintiffs and Roe; but this was done with the plaintiffs' consent, and further than that he had no authority to pledge it. He had no right to sell it, because he had acquired no title, and was not to have any until after delivery, when it was to be paid for. The judge further

charged, that the defendant was bound to deliver the flour to plaintiffs at their landing; and until he did so, he was not entitled to pay for milling.

It was part of the contract with defendant to deliver the flour to the plaintiffs, and this duty was a portion of the labor for which the defendant was to be paid. It is idle to say that the defendant had a right to be paid before he had performed the work entitling him to payment. He had an undoubted right to notify the plaintiffs that he should insist upon his pay before parting with the possession of the property, but this right to hold for his lien did not excuse him from the obligation to deliver. It was at the place of delivery that the defendant had a right to insist upon his lien. There was no error in this part of the charge.

The other portions objected to by the defendant are so connected with the points previously noticed, that it is difficult to separate them. If the property still remained in the plaintiffs, in consequence of the obligation on him to deliver the flour in New York, and he had only given Roe the privilege of having it ground at Poughkeepsie, Roe had no authority to dispose of it in any other way than was agreed on between the parties. The extent of his authority was to have the grain converted into flour, and then to be returned to the plaintiffs. This gave him no authority to sell or otherwise dispose of it. The testimony will not warrant the ground taken by the defendant's counsel, that there had been a complete sale and delivery to Roe, to vest the title in him, and that only the time of payment was postponed by the required delivery in New York. The express condition of sale was payment on the delivery, and there is nothing in the whole case which shows that the plaintiffs at any time consented to abandon this part of the contract. There is no difficulty in understanding the term used by Roe of a re-sale, where the property has never been delivered. It is an abandonment of the contract, or an agreement to take the property remaining undelivered, and the plaintiffs to assume the expenses chargeable upon the property.

It gave Roe no right to sell the plaintiffs' property before he had paid for it himself, according to the agreement.

The remaining point is, that the judge erred in charging that if the defendant had a lien he was bound to observe good faith, and had no right, in virtue of his lien, to make any other disposition of the flour, by selling or otherwise, without notice to the owners, and without a tender and demand of pay for milling. That the moment he shipped the property to New York for sale, it was a misappropriation of the subject of the lien, which destroyed the lien.

This is objected to, upon the ground that the defendant had authority from Roe to sell. It has already been held that Roe had no such authority, and, therefore, could give no such power to the defendant, and consequently the ground of the objection ceases. There can be no doubt that a misuse of the property pledged, or which is subject to a lien, by attempting to sell it, before it has become forfeited for non-payment of the lien, is of itself a conversion, and destroys the lien.

Such an act also renders a demand unnecessary. Part of the flour had been sold already, and the plaintiffs, if they were the owners, were not called upon, after such an act, to demand the property from the defendant before taking measures to save it. There is no error in this charge, of which the defendant can complain.

How far Roe was impeached by the other witnesses was a question for the jury. They have decided in his favor, and we see no reason to interfere with such decision. Giving him credit, the verdict of the jury is strictly in accordance with his testimony and cannot be said to be against the weight of evidence.

We see no cause to set aside the verdict in this case.

New trial denied.